# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:10cv222

| | |
|---|---|
| WILLIAM G. KATIBAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | |
| ) | **MEMORANDUM OF** |
| TARGET STORES, INC. and ) | **DECISION AND ORDER** |
| TARGET CORPORATION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on a motion for summary judgment by defendants Target Stores, Inc. and Target Corporation [docket #19], hereinafter referred to collectively as "defendant." Plaintiff William G. Katibah has responded in opposition to the motion and the matter is ripe for disposition. For the following reasons, the court will deny defendant's motion for summary judgment.

### I.  Background

Plaintiff filed this lawsuit on March 29, 2010, in Mecklenburg County Superior Court. On May 12, 2010, defendant removed the case to this court based on diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332. Plaintiff has sued defendant for injuries plaintiff sustained when he slipped and fell in the men's restroom in one of defendant's retail stores.

### II. Undisputed Facts

Plaintiff William G. Katibah is a family physician employed with Carolinas

Healthcare System at Cabarrus Family Medicine, Mallard Creek. He was 50 years old on December 20, 2008. On December 20, 2008, plaintiff, his wife, and several of his children visited defendant Target Corporation's University City Boulevard store in Charlotte, North Carolina, to do some Christmas shopping. (Katibah Dep. 27:25–28:6.) Upon entering the store, plaintiff went almost immediately to the men's restroom, which is in front of the store to the right of the entrance door.

Plaintiff had been in the store about 90 seconds before heading towards the restroom. (Katibah Dep. 28:7-18.) The door to the men's restroom was closed when plaintiff approached it. Plaintiff opened the door and walked a short distance down a hallway before turning right at the end of an interior wall into the main area of the restroom. (Katibah Dep. 29: 24–30:19.) Two urinals were at the back wall of the restroom; one urinal was occupied by another customer and the other was vacant. (Katibah Dep. 37:5-10.)

When plaintiff turned from the short hallway towards the urinals, he slipped and fell within a step or two, and within a second or so. (*See* Affidavit of William Katibah ¶ 5.) Plaintiff fell about halfway between the entrance and the urinals, which were located on the wall opposite the entrance. (Katibah Dep. 30:20-25; 31:12-13.) The room is more than eleven feet deep, which means that plaintiff fell after walking more than five and a half feet in the bathroom. (*Id.*, Def.'s Ex. C.) The puddle of urine itself was located in an open area between the entrance and the row of urinals. (*Id*. 30:20-25; 31:1-13.)

Plaintiff stated that his attention was focused on going towards the open urinal, and nothing drew his attention down towards the floor. (Katibah Dep. 31:1-9.) One of his feet

2

slid forward and he did a "split on the floor." (Katibah Dep. 35:2-5.) The "split" caused a severe injury to his left knee, which has since required multiple surgeries and has resulted in significant disability to his left knee joint.

It is undisputed that defendant Target had actual notice of a liquid substance on the floor in the men's restroom before plaintiff's fall. (Target's Response to Request for Admissions #2.) A Target employee named Desmond was trying to find out from another Target employee, Shannon Wooten, how to get a mop bucket, as both were aware of the liquid on the floor before plaintiff's fall. Desmond was a cart attendant, and such cleanups were part of his job. (Wooten Dep. 26:19–28:1.)

Soon after plaintiff fell, and while the two customers who were already in the men's restroom assisted him while he was on the floor, plaintiff's son David Katibah walked into the restroom. David Katibah saw plaintiff on the floor and then went to find his mother at plaintiff's request. Target employees Shannon Wooten and executive team leader Heather Hollmeyer came into the restroom and helped plaintiff into a chair with wheels. Target employees prepared an accident report and plaintiff's wife and family took him to a hospital for treatment of his knee.

Shannon Wooten, one of the Target employees who tended to plaintiff after his fall, described the puddle of urine as "hard to miss," stating "it was pretty significant" and "visible." (Wooten Dep. 43:18-25; 44:1.) She stated it was "a liquid, it was yellowish, and a lot, and you could obviously tell that . . . it appeared to be urine." (*Id*. 35:19-23.) Wooten stated that it was yellow urine on a white floor. (*Id*. 44:2-4.) Heather Hollmeyer, the other

3

Target employee in the bathroom after plaintiff's fall, described the puddle as "very yellow" and stated that it was "apparent that it was urine." (Hollmeyer Dep. 43:15-17.) Hollmeyer stated that it was probably two feet in size. (*Id*. 43:18-20.) Plaintiff stated that he could see some wetness and liquid on the floor after the fall. (Katibah Dep. 31:22-25; 32:1-4.)

There is conflicting testimony as to whether there were any warning signs, such as a cone, to warn the public about the puddle of urine. According to plaintiff, there were no warning signs or cones in place, either in the doorway to the restroom, in the short hallway inside the door of the restroom, or in the main area of the restroom where plaintiff eventually fell. (Target's Response to Request for Admissions #4; *see also* Affidavit of David Katibah, and William Katibah Dep. 36:7-15; 66:7-19; 65:20-24.) Plaintiff also testified that he did not remember if the door was propped open when he entered the restroom. (Katibah Dep. 36:16-21.) According to plaintiff's son David Katibah, the restroom door was closed when he entered, and there were no warning signs either inside the restroom or in the doorway to the restroom. (David Katibah Aff. ¶ 4.)

Target employee Wooten testified that when she arrived at the men's restroom to tend to plaintiff, the door was already propped open. (Wooten Dep. 14:17-24.) Target employee Hollmeyer recalled that there was a yellow caution cone in front of the door to the restroom. (Hollmeyer Dep. 18:3-7; 34:21-25; 35:1-8.) Target employee Wooten does not recall if the cone was in place, but she does recall another employee approaching her before plaintiff's fall asking for a mop bucket and stating there had been a spill. (Wooten Dep. 28:16-24.) Warning cones are typically placed at the door of the restroom by Target employees to warn

4

guests of wetness or a spill on the floor inside. (Hollmeyer Dep. 17:16-25; 18:1.)

**III.    Standard of Review on Summary Judgment**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a factfinder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**IV.    Analysis**

The law is well-settled in North Carolina that a store owner is not an insurer of its

premises. *Hull v. Winn-Dixie Greenville, Inc.*, 9 N.C. App. 234, 236, 175 S.E.2d 607, 609 (1970). Rather, a store owner "owes to its invitees the duty to exercise 'ordinary care to keep [its store] in a reasonably safe condition those portions of its premises which it may expect will be used by its customers during business hours, and to give warning of hidden perils or unsafe conditions insofar as they can be ascertained by reasonable inspection and supervision.'" *Rone v. Byrd Food Stores, Inc.*, 109 N.C. App. 666, 669, 428 S.E.2d 284, 285-86 (1993) (quoting *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 203, 130 S.E.2d 281, 283 (1963)).

Furthermore, a store owner generally owes a plaintiff the duty to warn the plaintiff of a dangerous condition on the premises unless it was an open and obvious danger on the property which a person of ordinary intelligence, using his eyes in an ordinary manner, would have seen. *See Benton v. United Bank Bldg. Co.*, 223 N.C. 809, 813, 28 S.E.2d 491, 493 (1944). If the condition is open and obvious, or if the plaintiff has equal or superior knowledge of the dangerous condition, the defendant has no duty to warn the plaintiff. *See Newsom v. Byrnes*, 114 N.C. App. 787, 788, 443 S.E.2d 365, 367 (1994). In determining the issue of "open and obvious," "the facts must be viewed *in their totality* to determine if there are factors which make the existence of a defect . . ., in light of the surrounding conditions, a breach of the defendant's duty and less than 'obvious' to the plaintiff." *Dowless v. Kroger Co.*, 148 N.C. App. 168, 171, 557 S.E.2d 607, 609-10 (2001) (emphasis in original) (quoting *Pulley v. Rex Hosp.*, 326 N.C. 701, 706, 392 S.E.2d 380, 384 (1990)). When a dangerous condition is neither open nor obvious, nor one in which plaintiff has superior knowledge, and

6

the store owner has actual or constructive knowledge of the existence of the condition, it is the duty of the store owner to give a warning to affected customers. *Sexton v. United States*, 797 F. Supp. 1292, 1302 (E.D.N.C. 1991).

"It is well settled in North Carolina that a claimant's negligence action will be barred if he failed to exercise ordinary care for his own safety, and that failure contributed to his injury." *Allen v. Crown Cent. Petroleum Corp.*, 352 F. Supp. 2d 629, 633 (M.D.N.C. 2005). Thus, "[w]hen a plaintiff does not discover and avoid an obvious defect, that plaintiff will usually be considered to have been contributorily negligent as a matter of law." *Kelly v. Regency Ctrs. Corp.*, 691 S.E.2d 92, 95 (2010) (quoting *Price v. Jack Eckerd Corp.*, 100 N.C. App. 732, 736, 398 S.E.2d 49, 52 (1990)). This rule applies generally unless there is some fact, condition, or circumstance that would divert the attention of an ordinarily prudent person from discovering an existing dangerous condition. *Id*. Contributory negligence is an affirmative defense in North Carolina. *See* N.C. R. Civ. P. 8(c).

In support of the motion for summary judgment, defendant contends that the puddle of urine was an obvious condition for which there was no duty to warn customers. Defendant notes that Target employee Heather Hollmeyer described the puddle as two feet in size and "very yellow" against a white floor. (*See* Hollmeyer Dep. 43:15-20.) Another Target employee, Shannon Wooten, described the puddle of urine as "visible," "pretty significant," and "hard to miss." (*See* Wooten Dep. 43:18-25; 44:1.) Defendant further notes that the bathroom is over eleven feet deep, and the fall occurred halfway into the room, and plaintiff therefore walked five to six feet before he fell. The puddle was in an open area,

7

halfway to the urinals located on the opposite wall from the entrance. According to defendant, there is no evidence that there was anything distracting plaintiff from observing his surroundings, and there is no evidence indicating that anything obstructed plaintiff's view of the puddle. Defendant contends, therefore, that the puddle of urine was clearly not a hidden condition for which defendant had a duty to warn.

Defendant further contends that plaintiff's negligence claim is barred because he was contributorily negligent in failing to avoid the puddle of urine. According to defendant, there is no evidence that there was any distraction that would have diverted plaintiff's attention away from walking safely to the row of urinals in the bathroom. Defendant further contends that there is no evidence that anything prevented an ordinarily prudent person from seeing the puddle of urine had he been paying attention. Defendant notes that plaintiff did not fall immediately upon entering the restroom, nor did he fall immediately upon turning the corner. Finally, defendant notes that plaintiff has not alleged any deficiency in lighting that would have prevented him from seeing the puddle of urine, or any obstruction blocking his view of the urine.

In response to the motion for summary judgment, plaintiff first notes that it is undisputed that defendant knew that there was a liquid substance on the floor of the men's restroom within the one-hour period before plaintiff's fall, as evidenced by defendant's response to plaintiff's requests for admissions. (*See* Def.'s Response to Request for Admissions #2.) Plaintiff notes that both Wooten and Desmond had been in the restroom before plaintiff's fall and they were both aware of the substance on the floor, whereas there

is no showing that plaintiff saw anything on the floor before he fell. Plaintiff contends that, here, as Target had actual notice of the liquid on the floor, it had a duty to give not just a warning of the condition to its customers, but it also had a duty to give adequate notice of the location of the dangerous condition. According to plaintiff, this leaves open the question of whether plaintiff would have noticed the dangerous condition if he had exercised reasonable care for his own safety under the circumstances. Plaintiff contends that a significant factual issue exists as to this question. Plaintiff notes, for instance, that he testified in his deposition that his focus, upon turning right at the end of the interior wall into the main area of the restroom, was to go to the vacant urinal. He stated that nothing drew his attention to the floor, and "the split" of his legs occurred only a "second or so" after he turned to the right. Plaintiff contends that there is therefore a jury question as to whether the liquid substance was obvious enough to draw his attention to it within such a short time, or "a step or two," after turning into the main area of the restroom while looking for an open urinal. Plaintiff further notes that the affidavit of plaintiff's son David Katibah supports a finding that, upon finding his father on the floor, there was no large quantity of liquid around his father, and nothing on the floor, other than his father, drew his attention to the floor. (*See* Affidavit of David Katibah ¶¶ 6, 8.)

Plaintiff further contends that, while it is true that both Target employees Wooten and Hollmeyer described the liquid as "visible" and "hard to miss" when each entered the restroom when they saw the liquid, their answers were in response to leading questions posed by defense counsel upon cross-examination in each deposition. In each case, on re-direct by

9

plaintiff's counsel, both women testified that their attention was immediately drawn to the floor where plaintiff was lying, as they knew someone had fallen, and they were looking for him as they entered. (Wooten Dep. 44:13–45:1; Hollmeyer Dep. 93:5–10.) Furthermore, neither testified as to where each was located when they saw the liquid, how close they were to it when they saw it, or how long they were in the restroom when they saw the liquid (*i.e.*, whether they saw the liquid when they first turned the corner to enter the main area of the restroom, or whether they first saw it when they were assisting plaintiff).

Plaintiff further contends that there is a variety of testimony as to whether any warning signs or cones were set out. Plaintiff notes that David Katibah, who was likely the next person entering the restroom after his father's fall, clearly states in his Affidavit that the rest room door was closed when he entered, and that there were no warning signs either inside the rest room or in the doorway to the rest room. (David Katibah Aff. ¶ 4.) Dr. Katibah testified that he did not recall seeing a cone anywhere outside the bathroom door, (Katibah Dep. 36:7-15), nor does he remember if the door was propped open or not, (Katibah Dep. 36:16-21). He testified that he did not see any warning signs that would indicate to him that there was something on the floor inside the rest room. (Katibah Dep. 65:20-24.)

In sum, plaintiff contends that there is clearly a factual issue for the jury determination as to whether the liquid upon which plaintiff slipped was "open and obvious," considering the following factors: the existence of the hallway wall in the bathroom, the short time and distance traveled by plaintiff after turning at the end of the wall in the bathroom, the short time and distance traveled by plaintiff after turning at the end of the wall, the question as to

the size and color of the substance, and the lack of information as to the two Target employees' timing and viewing of the liquid.

"Summary judgment is only appropriate based on an 'open and obvious' condition when the plaintiff has a more intimate knowledge of the dangerous condition than the property owner, or the plaintiff would have noticed the dangerous condition than the property owner, or the plaintiff would have noticed the dangerous condition if [h]e had exercised proper care." *Nelson v. Novant Health Triad Region, L.L.C.*, 159 N.C. App. 440, 444, 583 S.E.2d 415, 418 (2003). Here, since the undisputed evidence is that defendant had superior knowledge of the property and because defendant was aware of the puddle of urine because plaintiff slipped and fell, the court considers only if the evidence has established that the puddle of urine was an open and obvious danger as a matter of law. *See id.* at 444, 583 S.E.2d at 418 ("Summary judgment is only appropriate based on an 'open and obvious' condition when the plaintiff has a more intimate knowledge of the dangerous condition than the property owner, or the plaintiff would have noticed the dangerous condition if she had exercised proper care."); *see also Faircloth v. United States*, 837 F. Supp. 123, 126 (E.D.N.C. 1993) (where a woman slipped and fell in a post office when it had been raining for an extended period time, where the court granted summary judgment to the post office where there was a lack of constructive notice to the post office and where the plaintiff had superior knowledge of the wet floor).

Viewing the facts in the light the most favorable to plaintiff, the court cannot find as a matter of law that the puddle of urine was so open and obvious to a reasonable person in

11

plaintiff's position that plaintiff should have seen and avoided it. Therefore, a jury must be the one to determine whether plaintiff should have noticed the puddle of urine after he turned the corner around the wall and started walking towards the urinals. *Accord Allen*, 352 F. Supp. 2d at 633 ("It cannot be said as a matter of law, viewing the facts in a light most favorable to plaintiff, that the tote was so obvious to a reasonable person in plaintiff's position that it should have been discovered and avoided. While there seems to be little doubt that plaintiff could have seen the tote had he looked down, the jury must be the one to determine whether a reasonable person would have done so while turning into an aisle and trying to locate the checkout in a crowded convenience store."). Furthermore, because the court is denying summary judgment concerning the duty to warn, the court cannot grant summary judgment to defendants based on their derivative affirmative defense of contributory negligence on which they bear the burden of proof.

## V. Conclusion

For the reasons stated herein, the court **DENIES** defendant's motion for summary judgment [docket #19], as there are genuine issues of material fact in existence that preclude summary judgment.

**IT IS SO ORDERED**.

Signed: December 29, 2011

Max O. Cogburn Jr.
United States District Judge